## Maxon v. Chaplin

*Hasson & Hasson*, for plaintiff.

*Englehart, Larimer & Englehart* and *Whitsett & Lee*, for defendants.

GRIFFITH, J., April 10, 1956.—Plaintiff, Katherine L. Maxon, obtained a rule on defendants to show cause why the party plaintiff should not be amended from "Katherine L. Maxon" to "Albertine M. Hughes" by reason of the fact that Katherine L. Maxon had conveyed all her interest in the real estate which is the subject of this proceeding to Albertine M. Hughes and also had made an assignment to her of plaintiff's right of action for damages in trespass against defendants. After obtaining the rule upon defendants, Katherine L. Maxon died.

The cause of action as alleged in the complaint is that defendants removed by stripmining certain coal contained in the "D" and "E" seams underlying land claimed to have been owned by Apple Brothers. It is alleged that Apple Brothers conveyed the property and assigned the claim for damages to Philip N. Shettig, Esq., and that Philip N. Shettig, Esq., conveyed the same to Katherine L. Maxon and assigned the claim for damages to her.

Defendants filed an answer to the rule to substitute Albertine M. Hughes as party plaintiff in which they contend that the claim in this case is not assignable before verdict because it is a claim for unliquidated damages in tort. With this contention we do not agree and will, therefore, enter a decree making absolute

the rule and permit Albertine M. Hughes to be substituted as a party plaintiff in the place and stead of Katherine L. Maxon, now deceased.

At early common law under the principle of actio personalis moritur cum persona, it was generally held that a right of action for a tort is not assignable nor does it survive the death of either the tortfeasor or the injured party. In those days trespass had a strong quasi-criminal character and at first no one thought there was anything unjust in the rule that such a claim was not transmissible. If the injured party died it was felt that the crown and not the heirs or assignees of the injured party should prosecute for the crime. But the criminal aspect of trespass disappeared many years ago and gradually claims for unliquidated damages in trespass became assignable. The statute of 4 Edw. III, Chap. 7, which permitted the survivorship of an action of trespass de bonis asportatis is still in force in Pennsylvania: Seaboard Commercial Corporation v. Bardell, 49 D. & C. 300. In North v. Turner, 9 S. & R. 244, it was held that such actions could be assigned before judgment. Another exception was under the statute of 3 & 4 Wm. IV, Chap. 42, which permitted survivorship for actions of trespass for injuries to real property.

Although there is authority to the contrary, 1 Am. Jur. 68, §79, ". . . the weight of authority is to the effect that the enactment of statutes providing for the survival of actions operates incidentally to remove the restrictions on their assignability. The question of survivorship becomes the test whether an assignee can recover": 4 Am. Jur. 253, §31. "Generally it may be said that if a statute makes a cause of action ex delicto for injury to property survivable, the cause of action is assignable": 4 Am. Jur. 254, §33. There would seem to be no good reason why the test of survivorship should not be the test of assignability if it

be not extended to include causes surviving under the Wrongful Death or Survival Acts, for the inclusion of such causes would permit the assignment of claims for injuries strictly to the person: 15 Univ. of Pitt. L. R. 123.

If survivability is the test of assignability, the present cause of action in trespass for damages to real property is assignable. Under sec. 35(a) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §771, which superseded the Act of February 24, 1834, P. L. 73, sec. 28, it was provided that: "No personal action hereafter brought, except actions for slander and for libels, and no action for mesne profits or for trespass to real property, shall abate by reason of the death of the plaintiff or the defendant . . .". This act was repealed by the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.101, et seq., and section 601 of that act, 20 PS §320.601, provided as follows:

"All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the death of the plaintiff or of the defendant . . .".

In Kaufmann & Baer Co. v. Landau, 93 Pa. Superior Ct. 457, 461, the court said:

"The rule of the common law that all personal actions died with the party does not apply to proceedings involving a right of property . . .".

Whether or not survivability is the sole test of assignability, there can be no doubt today but that actions for damages occasioned by injury to real property are assignable.

In 4 Am. Jur. 248, §24, we find the following:

"Practically the only classes of choses in action which are not assignable are those for torts for personal injuries and for wrongs done to the person, the reputation, or the feelings of the injured party, and those based on contracts of purely personal nature, such as promises of marriage."

In 6 C.J.S. 1082, §34, it is stated that:

"A distinction is observed between those causes of action for wrongs which affect the person strictly and all others, . . . a right of action in tort, which . . . involves . . . a right of property, that is, for an injury to one's property or estate, is assignable." And, "Under the general rule as to the assignability of a right of action for injury to property, an assignment may be made of a right of action . . . for trespass on, or injury to, lands, as by wrongfully entering thereon and cutting and carrying away timber or mining ores therefrom . . .": Page 1084.

The assignability of claims against third persons is discussed in §547 of the Restatement of the Law of Contracts:

"(1) An assignment of a claim against a third person or a bargain to assign such a claim is illegal and ineffective if the claim is for . . . (d) damages for an injury the gist of which is to the person rather than to property, unless the claim has been reduced to judgment. . . ."

In section *e* under Comment we find the following:

"Damages for personal injuries such as assault, libel, slander, breach of promise to marry, are not assignable under the rule stated in this Subsection. Some injuries caused by a single act involve an injury of this sort, and also an injury to some property interest. Under the rule stated in this Subsection an assignment of a right to recover damages is not permissible if the injury is in the main personal, . . ."

While we have found no appellate court cases in this State involving the precise question before us, there are several lower court cases which have held that actions for damages to property are assignable.

In Continental Auto Insurance Association v. International Motor Company, 3 D. & C. 504 (1923), the

court held that a right of action for damages to an automobile was assignable.

In Moffitt v. Vesta Coal Company, 17 Wash. Co. 204 (1936), plaintiff sued in trespass for damages resulting from defendant mining the underlying seam of coal in an adjacent tract alleging that such mining included the removal of the surface support and caused injuries to plaintiff's land. Plaintiff's right of action was assigned before verdict and the court held that the assignment was valid and said "that the test of assignability is whether the right of action would survive."

In Hutchison v. Ash, 1 Lyc. 1 (1949), the court held that an assignment may be made of a right of action for wrongfully entering and cutting and carrying away timber.

Defendants cite several cases, none of which control the situation we now have before us.

In Marsh v. Western N. Y. & Penna. Railway Company, 204 Pa. 229, the right of action sought to be assigned was for damages arising from personal injuries.

In Sensenig v. Penna. R. R. Co. 229 Pa. 168, the court said:

"The single question raised by this appeal, is whether a suit brought against a common carrier to recover damages for discrimination under the act of June 4, 1883, is assignable before verdict."

The court found that a right of action for discrimination was so personal as not to be assignable. The court said, however, page 172: "Such a right does not seem to us to be a property right, capable of assignment, prior to liquidation; but similar rather to an action for malicious prosecution, or for the abuse of legal process, which actions are not assignable." Thus the court, in this case, while refusing to recognize the assignability of a right of action for damages for

discrimination as being strictly personal, recognized the rule that a claim founded upon the invasion of a property right is capable of assignment prior to liquidation.

In Selheimer v. Elder, 98 Pa. 154, the court refused to permit the *attachment execution* of a claim for damages to property, that is, a claim against a railroad company for wrongfully entering upon and taking the land of another. But this was an *attachment* and not a voluntary assignment and the garnishment statutes usually limit such process to "debts" and are generally held not to cover unliquidated claims: 93 A.L.R. 1088. Moreover, "The controlling characteristic of the remedy by garnishment is, that the liability of the garnishee must originate in, and be dependent on, contract": 12 R.C.L. 797.

In Pennsylvania, the Attachment Execution Statute of June 16, 1836, P. L. 755, sec. 35, 12 PS §2265, under which the attachment in Selheimer v. Elder was issued, permits an attachment execution: "In the case of a debt due to the defendant . . .". "A debt is a sum of money due by contract, express or implied": Moorehead's Estate, 289 Pa. 542, 553. Consequently, the Selheimer case is authority only for the rule that an unliquidated claim for damages to real property is not such a "debt" upon which may be issued an attachment execution. That case did not decide that such a claim is not assignable.

Being satisfied that the right of action set forth in the complaint is assignable, we, therefore, enter the following:

### Decree

And now, April 10, 1956, after argument and upon due consideration, the rule heretofore granted plaintiff to show cause why Albertine M. Hughes shall not be substituted as party plaintiff in the above entitled action is hereby made absolute.

*Exception*

To all of which counsel for defendants except and pray that an exception be noted and bill sealed; all of which is, the day and year aforesaid, accordingly done.